### In the Matter of the GUARDIANSHIP OF Loraine McGREGORY.

No. S–12597.

Supreme Court of Alaska.

Sept. 19, 2008.

**68.** *Wessells v. State, Dep't of Highways*, 562 P.2d 1042, 1045 (Alaska 1977).

Michael W. Flanigan, Walther & Flanigan, Anchorage, for Karen Decker–Brown, individually as Intervenor and as Personal Representative of the Estate of Loraine McGregory.

Laura C. Bottger, Assistant Attorney General, Anchorage, Talis J. Colberg, Attorney General, Juneau, for State of Alaska.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

## OPINION

MATTHEWS, Justice.

The question presented in this appeal is whether attorney's fees and costs should be awarded as a matter of course to parties who successfully oppose the State's efforts to impose a guardianship on an allegedly incapacitated person. The pertinent facts, briefly stated, are as follows.

In 2006 eighty-eight-year-old Loraine McGregory was moved from the Pioneer Home in Anchorage by her daughter Karen Decker–Brown. When Decker–Brown refused to tell the State where McGregory was

residing, the State filed a petition for guardianship under AS 13.26.090. The petition claimed that McGregory was incapacitated and that it was not known where she was or who was caring for her. It also alleged that Decker–Brown, who held McGregory's power of attorney, was not paying McGregory's bills, including a $27,000 debt to the Pioneer Home, and that she was making decisions that might not be in McGregory's best interests.

McGregory and Decker–Brown appeared in the guardianship proceedings through separate privately retained counsel. Decker–Brown moved to dismiss the petition and McGregory joined in the motion. Decker–Brown claimed in support of her motion that the Pioneer Home had inappropriately moved McGregory to a ward for severely disabled patients and when the home refused to reverse the transfer she moved McGregory, with McGregory's consent, to a private assisted living facility where McGregory was doing well. She described the outstanding bill to the Pioneer Home as merely a matter of McGregory's insurer not making payments on time.[1]

The State filed a "non-opposition" to the motion to dismiss, stating that a social worker had visited McGregory and interviewed her physician and the State had no further concerns regarding McGregory. The superior court dismissed the guardianship petition.

Both McGregory and Decker–Brown moved for actual attorney's fees and costs. McGregory based her motion on Civil Rule 82, claiming that the State's petition was in bad faith.[2] She sought fees of $2,500. Decker–Brown based her motion on AS 13.26.131(d), claiming that the petition was "malicious, frivolous, or without just cause."[3] She sought fees of $6,500 and costs of $1,212.50.[4]

The State opposed both motions. As to McGregory's motion, the State contended that Rule 82 should not apply to guardianship proceedings, and even if Rule 82 did apply, McGregory would not be entitled to full fees because the State did not act in bad faith. As to Decker–Brown's motion, the State argued that AS 13.26.131(d) did not apply. That statute addresses whether the State or the respondent should bear the costs and fees of attorneys and experts appointed by the court to represent a respondent under AS 13.26.106(b) and AS 13.26.109(d). Here, the State argued that Decker–Brown was not a "respondent" and the attorneys and experts were not court-appointed under those subsections. The State also argued that even if the statute did apply, its standard for allocating costs to the State—that the petition be malicious, frivolous, or without just cause—was not met.

After both movants replied, the court denied both motions finding that AS 13.26.131 did not apply and the petition was not "mali-

---

**1.** On appeal she also refers to the bill as partly disputed, due to the increased costs of McGregory's residence in the severely disabled ward.

**2.** Civil Rule 82 calls for the award of partial attorney's fees to a prevailing party in civil litigation as a matter of course. In cases of vexatious or bad faith conduct or in the presence of other equitable factors deemed relevant, an enhanced fee of up to and including actual reasonable attorney's fees may be awarded. *See* Alaska R. Civ. P. 82(b)(3)(G) & (K).

**3.** AS 13.26.131 provides:
    (a) Subject to (d) of this section, the state shall bear the costs of the visitor and expert appointed under AS 13.26.106(c).
    (b) Subject to (c) and (d) of this section, the respondent shall bear the costs of the attorney appointed under AS 13.26.106(b), of the expert appointed under AS 13.26.109(d), of the guardian ad litem appointed under AS 13.26.025,

and of other court and guardianship costs incurred under this chapter.
    (c) The state shall pay all or part of the costs described in (b) of this section if the court finds that the payment is necessary to prevent the respondent from suffering financial hardship or from becoming dependent upon a government agency or a private person or agency.
    (d) The court may require the petitioner to pay all or some of the costs described in (a) and (b) of this section if the court finds that the petitioner initiated a proceeding under this chapter that was malicious, frivolous, or without just cause.

**4.** Costs are awarded to prevailing parties under Civil Rule 79 as a matter of course under generally the same circumstances that awards are made under Civil Rule 82 as to attorney's fees. In this opinion references to Civil Rule 82 as to fees should be understood to include references to Civil Rule 79 pertaining to costs.

cious, frivolous, or without just cause." McGregory and Decker–Brown appeal these rulings. Pending appeal, McGregory died and Decker–Brown has been substituted as the personal representative of McGregory's estate.

On appeal Decker–Brown contends that Civil Rule 82 should apply in guardianship proceedings. She acknowledges that guardianships are governed by the Probate Rules rather than the Civil Rules. She relies on Probate Rule 1(e) which provides that where no procedure is prescribed in the Probate Rules "the court may proceed in any lawful manner, including application of the Civil ... Rules," unless a chosen method of proceeding "interfere[s] with the unique character and purpose of probate proceedings." [5] Decker–Brown notes that in *Crittell v. Bingo*,[6] a will contest case, this court held that Rule 82 applied where a statutory fee provision did not apply because of the fraud of the person claiming to be the personal representative.[7] Decker–Brown stresses in her reply brief that guardianship proceedings can be abused by government agencies and that awarding attorney's fees to respondents serves to protect them against such abuses.

The State argues that applying Rule 82 as a matter of course to guardianship proceedings would interfere with the unique character and purpose of guardianship proceedings by discouraging good faith actions taken to protect vulnerable adults. Further, the State argues by analogy to AS 13.26.131(d) that except where a petition is malicious, frivolous, or without just cause, the respondent should bear the costs of her counsel.[8] The State relies on two cases: *Cooper v. State*, which held that child-in-need-of-aid (CINA) proceedings are not subject to Rule 82 under a CINA rule similar to Probate Rule 1(e);[9] and *Wetherhorn v. Alaska Psychiatric Institute*, which held that civil commitment proceedings are likewise not subject to Rule 82.[10]

■ We believe that the State's position is largely correct.[11] A guardianship proceeding is protective in character, as are CINA proceedings and proceedings seeking the civil commitment of persons gravely disabled by mental illness. It would be inconsistent to exempt CINA proceedings and civil commitments from the routine application of Rule 82 but fail to make the same exemption with respect to guardianship proceedings initiated by the State.[12]

The rationale that we expressed in *Wetherhorn* also applies to guardianship proceedings and distinguishes *Crittell v. Bingo* in terms that are relevant to this case:

> The superior court held that Probate Rule 1(e) prohibited application of Rule 82

---

**5.** Probate Rule 1(e) provides:
> Where no specific procedure is prescribed by these rules, the court may proceed in any lawful manner, including application of the Civil and Evidence Rules, applicable statutes, the Alaska and United States Constitutions or common law. Such a procedure may not be inconsistent with these rules and may not unduly delay or otherwise interfere with the unique character and purpose of probate proceedings.

**6.** 83 P.3d 532 (Alaska 2004).

**7.** *Id.* at 536.

**8.** Both parties agree that AS 13.26.131 does not apply to the fees of counsel who are privately retained by a respondent. For the purposes of this case we accept this position. We note, however, that it is possible that the fees of privately retained counsel are encompassed within the phrase "other ... guardianship costs" in subsection (b).

**9.** 638 P.2d 174, 178 (Alaska 1981).

**10.** 167 P.3d 701, 703 (Alaska 2007). *Wetherhorn* was decided after the State filed its appellee's brief. The State submitted *Wetherhorn* as supplemental authority pursuant to Appellate Rule 212(c)(12).

**11.** The questions presented for review are questions of law to which we apply our independent judgment. *Crittell*, 83 P.3d at 535 n. 10 (citing *Enders v. Parker*, 66 P.3d 11, 13–14 (Alaska 2003)). Under this standard, we adopt the rule of law that is most persuasive in light of precedent, reason, and policy. *Frank E. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 77 P.3d 715, 717 (Alaska 2003) (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

**12.** Since this case involves a guardianship petition initiated by the State, we express no view as to whether the holding of this opinion should be extended to guardianship proceedings initiated by private parties.

in civil commitment proceedings. It determined that Rule 82 was inconsistent with the purpose and character of such proceedings. Wetherhorn now argues that the superior court erred in making this determination.

We agree with the superior court. Civil commitment is a unique procedure:

> Unlike civil or criminal proceedings, the interests of the parties to a civil commitment proceeding are not entirely adverse. The state's concerns are to provide care to those whose mental disorders render them unable to care for themselves and to protect both the community and the individuals themselves from dangerous manifestations of their mental illness. [*Goetz v. Crosson,* 967 F.2d 29, 34–35 (2d Cir.1992).]

In *Cooper v. State,* we held that Rule 82 is inapplicable in child-in-need-of-aid (CINA) cases. [638 P.2d 174, 178 (Alaska 1981).] We reasoned that applying Rule 82 in CINA cases would chill the state's willingness to perform a public function—serving the welfare of children—by burdening it with additional costs of litigation. [*Id.*] We concluded that application of Rule 82 would be inconsistent with the purpose and character of CINA proceedings. [*Id.*] Civil commitments are analogous to CINA cases in that they are designed to protect the welfare of at-risk people. Application of Rule 82 in civil commitment hearings could similarly deter the state from engaging in needed protective litigation. Thus, as in *Cooper,* we hold that Rule 82 is inconsistent with the character and purpose of civil commitment proceedings.

Wetherhorn relies on *Crittell v. Bingo* for the proposition that Rule 82 is applicable in probate proceedings. [83 P.3d 532 (Alaska 2004).] In *Crittell,* we applied Rule 82 in a will contest. [*Id.*] We stated that in probate proceedings, "Civil Rule 82 governs the award of fees unless a specific provision of the Probate Rules applies." [*Id.* at 536] Wetherhorn argues that *Crittell* stands for the blanket proposition that

"Rule 82 does apply to Probate Court Proceedings."

Wetherhorn's reading of *Crittell* is too broad. Her interpretation would eliminate that part of Probate Rule 1(e) that requires an inquiry as to whether the application of a Civil Rule would be inconsistent or interfere with the unique character of a given probate proceeding. Rule 82 survived this inquiry in *Crittell* but not in *Cooper* because of a fundamental difference between will contests and CINA cases. Will contests comprise disputes between private litigants. A litigant in a will contest usually litigates only to increase his own share of a will, regardless of the effect this has on society generally. In contrast, the state in a CINA case litigates to protect a child's, and society's, interests. This distinction between beneficent and self-interested litigation supports the result here. [13]

The State's analogy to the policy underlying AS 13.26.131(d) is also apt.[14] In AS 13.26.131(b) the legislature has provided that a respondent will ultimately be responsible for the costs of an appointed attorney, an expert appointed to testify on behalf of a respondent, an appointed guardian ad litem, and other guardianship costs. There are two exceptions: cases of financial hardship as provided in subsection (c), and where the initiation of a proceeding "was malicious, frivolous, or without just cause" as provided in subsection (d). If the subsection (d) exception is satisfied, the court may require the State "to pay all or some of the costs [of the appointed attorney and expert.]" There is little reason why prevailing respondents who do not receive appointed counsel should be able to shift the burden of fees that they incur, while respondents receiving appointed counsel, for whom they must pay, may not. Similarly, since respondents receiving appointed counsel can shift their fees when the subsection (d) exception is satisfied, respondents who directly choose their own counsel should likewise be able to shift these costs to the State when the State acts maliciously, frivolously, or without just cause.

13. *Wetherhorn,* 167 P.3d at 703–04.

14. *See supra* note 3.

■ It follows that insofar as Rule 82 routinely awards fees in favor of the prevailing party, it should not be used in guardianship cases because doing so would interfere with the unique character and purpose of guardianship proceedings. But to the extent that Rule 82 permits an award of up to full reasonable attorney's fees for vexatious or bad faith conduct or for cases that are malicious, frivolous, or brought without just cause,[15] utilization of the rule does not interfere with the unique character of guardianship proceedings and in such circumstances the enhanced fee shifting contemplated by Rule 82 could be considered to be authorized under Probate Rule 1(e) if AS 13.26.131(d) is inapplicable.[16]

■ Decker–Brown argues in her reply brief that the State's petition was without just cause. This argument is waived because it was not presented in her opening brief.[17] Further, it is a close question as to whether, as Decker–Brown characterizes it, the State's action was an act of "high handed bureaucrats" bent on collection of a partly unjust bill, or was justified by the State's knowledge of McGregory's fragile condition and concern for her well being when Decker–Brown would not disclose her whereabouts. How the State's conduct should be characterized was a question of fact for the superior court, and its finding that the petition was not malicious, frivolous, or without just cause is not clearly erroneous.[18]

For the reasons stated the judgment is AFFIRMED.

---

15. The standard for the exception in AS 13.26.131(d) may be considered encompassed within Civil Rule 82(b)(3)(G) and (K).

16. *See supra* note 8.

17. *See In re Dissolution of Marriage of Alaback,* 997 P.2d 1181, 1184 n. 3 (Alaska 2000) ("Points given only a cursory treatment in the argument portion of a brief will not be considered on appeal, even if developed in the reply brief.").

18. *See, e.g., Fyffe v. Wright,* 93 P.3d 444 (Alaska 2004) (findings of fact are reviewed for clear error).